No. 16-2514

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
    Plaintiff/Appellant,

v.

CITY OF LONG BRANCH,
    Defendant/Appellee.

_____

On Appeal from the United States District Court
for the District of New Jersey
_____

OPENING BRIEF OF THE EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION AS APPELLANT
_____

P. DAVID LOPEZ
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

MARGO PAVE
Assistant General Counsel

JEREMY D. HOROWITZ
Attorney

U.S. EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St., N.E., Room 5SW24J
Washington, D.C. 20507
(202) 663-4716
jeremy.horowitz@eeoc.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................. iii

STATEMENT OF JURISDICTION............................................................1

STATEMENT OF THE ISSUES............................................................1

STATEMENT OF RELATED CASES AND PROCEEDINGS ..............................2

STATEMENT OF THE CASE............................................................3

    A.    Course of Proceedings............................................................3

    B.    Statement of the Facts ............................................................3

    C.    The Magistrate Judge's and District Court's Decisions........................5

STANDARD OF REVIEW ............................................................7

SUMMARY OF ARGUMENT ............................................................7

ARGUMENT ............................................................8

    I.    Long Branch Waived its Right to Challenge the EEOC's
    Administrative Subpoena. ............................................................8

    II.    The EEOC is Entitled to Long Branch's Unconditional
    Production of the Subpoenaed Materials. ............................................11

        A.    The Requested Records are Clearly Relevant, and
        Congress Has Authorized the Potential Disclosure of
        Such Material to the Charging Party........................................11

        B.    The Magistrate Judge and District Court Based Their
        Rulings on a Misreading of *Associated Dry Goods*.................19

CONCLUSION............................................................22

CERTIFICATE OF BAR MEMBERSHIP............................................................24

i

CERTIFICATE OF COMPLIANCE ........................................................................24

CERTIFICATE OF IDENTICALLY FILED BRIEFS ...........................................25

CERTIFICATE OF VIRUS CHECK .....................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*EEOC v. Aerotek, Inc.*,
    498 F. App'x 645 (7th Cir. 2013) ..................................................................9, 11

*EEOC v. Aon Consulting, Inc.*,
    149 F. Supp. 2d 601 (S.D. Ind. 2001) ...................................................................18

*EEOC v. Associated Dry Goods Corp.*,
    449 U.S. 590 (1981) .......................................................................................*passim*

*EEOC v. Bay Shipbuilding Corp.*,
    668 F.2d 304 (7th Cir. 1981) .............................................................................17

*EEOC v. C & P Telephone Co.*,
    813 F. Supp. 874 (D.D.C. 1993) .........................................................................18

*EEOC v. City of Milwaukee*,
    54 F. Supp. 2d 885 (E.D. Wis. 1999) .............................................................9, 11

*EEOC v. Cuzzens of Georgia, Inc.*,
    608 F.2d 1062 (5th Cir. 1979) .......................................................................9, 11

*EEOC v. Dillon Cos.*,
    310 F.3d 1271 (10th Cir. 2002) ..........................................................................12

*EEOC v. Franklin & Marshall College*,
    775 F.2d 110 (3d Cir. 1985) .............................................................................12

*EEOC v. Kronos Inc.* ("*Kronos I*"),
    620 F.3d 287 (3d Cir. 2010) ................................................................................7

*EEOC v. Kronos Inc.* ("*Kronos II*"),
    694 F.3d 351 (3d Cir. 2012) .............................................................................18

*EEOC v. Lutheran Social Services*,
    186 F.3d 959 (D.C. Cir. 1999)............................................................................10

*EEOC v. McLane Co.*,
    804 F.3d 1051 (9th Cir. 2015) ..........................................................................17

*EEOC v. Morgan Stanley & Co.*,
    132 F. Supp. 2d 146 (S.D.N.Y. 2000) ........................................................16, 18

*EEOC v. Randstad*,
    685 F.3d 433 (4th Cir. 2012) .......................................................................12, 14

*EEOC v. Roadway Express, Inc.*,
    569 F. Supp. 1526 (N.D. Ind. 1983) ...............................................................9, 10

*EEOC v. Roadway Express, Inc.*,
    580 F. Supp. 1063 (W.D. Tenn. 1984) ..............................................................13

*EEOC v. Shell Oil Co.*,
    466 U.S. 54 (1984)....................................................................................12, 14

*EEOC v. Technocrest Systems, Inc.*,
    448 F.3d 1035 (8th Cir. 2006) ..........................................................................13

*EEOC v. Township of Howell*,
    Civ. Nos. 91-2731 and 91-2732, 1991 WL 160350 (D.N.J.
    Aug. 12, 1991) ..................................................................................................13

*EEOC v. University of New Mexico*,
    504 F.2d 1296 (10th Cir. 1974) ........................................................................13

*EEOC v. University of Pennsylvania*,
    493 U.S. 182 (1990).........................................................................8, 12, 14, 17

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950).........................................................................................12

**Statutes**

28 U.S.C. § 1291 ......................................................................................................1

iv

29 U.S.C. § 161 ..........................................................................................8

   29 U.S.C. § 161(1) ..............................................................................8

   29 U.S.C. § 161(2) ..............................................................................1

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to
2000e-17 ...........................................................................................*passim*

   42 U.S.C. § 2000e-5(b) ......................................................................8

   42 U.S.C. § 2000e-5(f)(3) ..................................................................1

   42 U.S.C. § 2000e-8(a) ...........................................................8, 12, 14

   42 U.S.C. § 2000e-8(e) ...............................................................15, 17

   42 U.S.C. § 2000e-9.........................................................................1, 8

**Other Authorities**

29 C.F.R. § 1601.16(b) ..................................................................*passim*

29 C.F.R. § 1601.22 ......................................................................2, 15

3d Cir. L.A.R. 28.1(a)(2) ....................................................................3

EEOC Compliance Manual § 28.6.....................................................19

Fed. R. App. P. 4(a)(1)(B) ..................................................................1

## STATEMENT OF JURISDICTION

The EEOC filed this subpoena enforcement action in the U.S. District Court for the District of New Jersey on February 10, 2015.  I-AA-15-31.[1]  The district court had jurisdiction over this matter pursuant to 42 U.S.C. §§ 2000e-5(f)(3) and 2000e-9 and 29 U.S.C. § 161(2).  On July 30, 2015, Magistrate Judge Bongiovanni entered an order granting the Application in part and denying it in part.  I-AA-10-14.  On March 21, 2016, the district court entered an order denying the EEOC's appeal of the magistrate judge's ruling.  I-AA-3.  The EEOC filed a timely notice of appeal on May 18, 2016.  I-AA-1; *see* Fed. R. App. P. 4(a)(1)(B).  This Court now has jurisdiction over the appeal pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.  May an employer oppose an EEOC subpoena without following the requirements for administrative review set forth in 29 C.F.R. §§ 1601.16(b)(1) and (2)?  The EEOC raised the issue below in its Memorandum in Support of Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced, II-AA-21-23, and its Memorandum in Support of EEOC's Appeal of a Portion of the Magistrate Judge's Order, II-AA-108.  The Magistrate Judge addressed but did not rule on the argument in her Letter Order, I-AA-12.

---

[1] All references to "[#]-JA-[#]" refers to material in the Appellant's Appendix, cited by volume and page number.

2.  Under 29 C.F.R. § 1601.22, the EEOC may disclose to the charging party information it obtains during its investigation of a charge of discrimination "where disclosure is deemed necessary for securing appropriate relief."  The Supreme Court held in *EEOC v. Associated Dry Goods Corp.*, 449 U.S. 590 (1981), that such disclosure is permissible, notwithstanding the EEOC's duty to keep such information confidential.  *Id.* at 598-603.  Did the district court therefore err when it held that Long Branch was entitled to withhold subpoenaed information unless the EEOC agreed not to reveal any of that information to the charging party or his attorney?  The EEOC raised the issue below in its Memorandum in Support of Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced, II-AA-23-28, its Memorandum in Support of EEOC's Appeal of a Portion of the Magistrate Judge's Order, II-AA-108-113, and its Reply Memorandum in Support of its Appeal of a Portion of the Magistrate's Order, II-AA-126-129.  The Magistrate Judge ruled on the issue in her Letter Order, I-AA-13-14.  The district court ruled on the issue in its Memorandum Opinion, I-AA-7-8.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously.  The EEOC is not aware of any other case or proceeding that is in any way related, completed, pending or

about to be presented before this Court or any other court or agency, state or federal. *See* 3d Cir. L.A.R. 28.1(a)(2).

## STATEMENT OF THE CASE

### A.    Course of Proceedings

The EEOC filed an Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced on February 10, 2015. II-AA-15-31. After full briefing by both parties, the magistrate judge granted the Application in part and denied it in part on July 30, 2015. Her order enforced the administrative subpoena the EEOC issued to Defendant City of Long Branch but only on the condition that the EEOC not disclose any of the subpoenaed information to the charging party. I-AA-13-14. The EEOC filed its appeal of that ruling to the district court. II-AA-105-114. After full briefing by both parties, the district court denied the appeal and affirmed the magistrate judge's ruling. I-AA-4-9. The EEOC filed a Notice of Appeal on May 18, 2016. I-AA-1-2.

### B.    Statement of the Facts

Lyndon B. Johnson, a black lieutenant in the Long Branch Police Department, filed a charge with the EEOC on February 7, 2013, alleging Long Branch had racially discriminated against him by subjecting him to harsher discipline than six similarly situated white officers. II-AA-36-40. To investigate the charge, the EEOC asked Long Branch for all disciplinary records for

Lt. Johnson and the six comparators he had identified.  II-AA-51.  Long Branch

refused to produce the documents unless the EEOC first consented to an agreement

under which the material Long Branch produced would be designated

"Confidential" and the Commission would agree not to "provide[], publish[], or

otherwise reveal[], in whole or in part, other than in the form of [its] opinions and

conclusions," any of this confidential material to Lt. Johnson or his counsel.  II-

AA-53-54.

    The Commission informed Long Branch that it could not agree to the

proposed terms, but in an attempt to allay Long Branch's concerns it summarized

the various provisions of Title VII of the Civil Rights Act of 1964, the Privacy Act

of 1974, and the Freedom of Information Act that set out confidentiality

protections and strictly limit the circumstances under which the EEOC is allowed

to divulge the requested information.  II-AA-56-57.  Long Branch responded that

the Police Officers' Union would not authorize Long Branch to release the

information without a court order.  II-AA-59.

    After additional efforts to obtain the materials informally proved ineffective,

the EEOC served a subpoena on Long Branch by email and certified mail (and sent

a courtesy copy by fax) on July 23, 2014.  Long Branch signed for the certified

mail copy on July 25, 2014.  The subpoena requested "any and all documents

which refer to or address the disciplinary records" of Lt. Johnson and the six

comparators.  II-AA-63-66.

In response, Long Branch sent the EEOC a document styled a "Motion to

Quash Subpoena," captioned for New Jersey state court, in which it defended its

refusal to produce the information with references to the concerns of the Police

Officers' Union and the Internal Affairs Policy and Procedures of the New Jersey

Attorney General's Office.  II-AA-68-73.  The EEOC received a copy of this

document on August 7, 2014.  II-AA-69.  Long Branch did not submit a petition to

modify or revoke the subpoena to the EEOC, as required by 29 C.F.R.

§ 1601.16(b).  The EEOC filed its Motion to Enforce Subpoena in federal district

court on February 10, 2015, seeking an Order to Show Cause why the court should

not compel Long Branch to comply in full with the subpoena.  II-AA-15-31.

### C.    The Magistrate Judge's and District Court's Decisions

Magistrate Judge Bongiovanni concluded that Long Branch was justified in

seeking a confidentiality agreement before producing any documents in response

to the subpoena.  I-AA-10-14.  Although she accurately summarized the parties'

positions – including the EEOC's position that Long Branch had waived its right to

challenge the subpoena by failing to file a petition with the EEOC to modify or

revoke it within the time limits specified in the regulations – she did not address

the merits of the waiver argument.  The magistrate concluded that "there is

absolutely no reason why the charging party, Lt. Johnson, should be granted access to the personnel and employment records of the seven [sic] police officers." I-AA-13. She interpreted the Supreme Court's decision in *Associated Dry Goods* as barring an employee who files a charge with the EEOC from reviewing other employees' personnel files and records, "even if [the other employees] had also filed complaints against" the employer. *Id.* She then reasoned that employees who had not filed their own charges were entitled to even greater privacy protections than those who had filed charges against the employer, because "they are completely unrelated to and uninvolved with the charging party's complaint." *Id.* The magistrate stated she was "perplexed by the EEOC's failure to recognize the officers' privacy interests and its refusal to simply agree to this limitation." *Id.* Based on this analysis, Judge Bongiovanni ordered Long Branch to comply with the subpoena but ordered the EEOC not to reveal any of the records produced to the charging party, Lt. Johnson. I-AA-13-14.

On appeal the district court affirmed the magistrate judge's ruling. After finding no law addressing "whether a charging party is considered a member of the public with respect to the files of individuals who have not filed any charges with the EEOC," the court held that an order precluding the EEOC from sharing information about other employees' personnel files with the charging party was consistent with *Associated Dry Goods*. I-AA-7-9. Both the magistrate judge and

6

the district court made their rulings without the benefit of oral argument.  I-AA-10; I-AA-4.

## STANDARD OF REVIEW

On appeal, the court reviews both a decision to enforce an administrative subpoena and a decision to grant a confidentiality order for an abuse of discretion. *EEOC v. Kronos Inc.* ("*Kronos I*"), 620 F.3d 287, 295 (3d Cir. 2010).  Such abuse occurs when the court bases its decision on "a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact."  *Id.* at 295-96.

## SUMMARY OF ARGUMENT

Long Branch waived its right to challenge the subpoena by failing to respond in a timely manner and by neglecting to follow the procedures set forth in the Code of Federal Regulations.  More importantly, based on the case law governing EEOC administrative subpoenas, the Commission is entitled to obtain the personnel files of comparators and to share material contained in those files with the charging party if it determines, in its discretion, that doing so will promote the administrative settlement of his claims.  The district court's contrary conclusion, apparently based on a misreading of *Associated Dry Goods*, is an abuse of discretion.

7

## ARGUMENT

## I.    Long Branch Waived its Right to Challenge the EEOC's Administrative Subpoena.

Title VII requires the Commission to investigate an aggrieved individual's charge of an unlawful employment practice. 42 U.S.C. § 2000e-5(b). To this end, Section 709(a) affords the Commission broad investigatory powers, entitling it to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices covered by this [title] and is relevant to the charge under investigation." 42 U.S.C. § 2000e-8(a).

The Commission often requests information from employers without involving the courts. If an employer refuses to comply voluntarily with a request for information, however, the EEOC may issue an administrative subpoena to compel the respondent's compliance. 42 U.S.C. § 2000e-9 (incorporating the procedures detailed in 29 U.S.C. § 161); *EEOC v. Univ. of Pa.*, 493 U.S. 182, 191 (1990).

If an employer wishes to resist a subpoena, it must file – within five business days after service of the subpoena – a petition for revocation or modification. The petition must be filed with the EEOC Director who issued the subpoena (or, if the subpoena was issued by a Commissioner, with the EEOC General Counsel). The petition must identify each portion of the subpoena it finds objectionable and explain the basis for the employer's refusal to comply. 42 U.S.C. § 2000e-9; 29

U.S.C. § 161(1); 29 C.F.R. § 1601.16(b).  Failure to do so may result in a waiver of the right to object to the subpoena.  *See EEOC v. Aerotek, Inc.*, 498 F. App'x 645, 648-49 (7th Cir. 2013) (holding that the employer waived its right to object to a subpoena when it submitted a petition to revoke six business days after service); *EEOC v. Cuzzens of Ga., Inc.*, 608 F.2d 1062, 1064 (5th Cir. 1979) ("[A]n employer served with an EEOC subpoena and making no effort to exhaust the available administrative remedies may not thereafter challenge the subsequent judicial enforcement of that subpoena for any reason short of objections based on constitutional grounds."); *EEOC v. City of Milwaukee*, 54 F. Supp. 2d 885, 891 (E.D. Wis. 1999) ("In an administrative subpoena enforcement action, a person who has failed to exhaust his or her administrative remedies in challenging an EEOC subpoena generally is precluded from raising defenses to the judicial enforcement of the subpoena.").

The administrative exhaustion requirement has a number of important benefits.  To the extent it first provides the agency an opportunity to "exercise its discretion [and] apply its expertise," potentially discovering and correcting its own errors and allowing the complaining party to vindicate its rights before involving the courts in the dispute, it "conserve[s] scarce judicial resources."  *EEOC v. Roadway Express, Inc.*, 569 F. Supp. 1526, 1528 (N.D. Ind. 1983) (citing *McKart v. United States*, 395 U.S. 185, 193-95 (1969)).  It allows the agency to develop the

9

necessary factual record, isolating and highlighting the relevant issues in dispute.
*Id.* Perhaps most importantly, it discourages people from ignoring the agency's
procedures deliberately, which could weaken the agency's effectiveness. *Id.* at
1528-29.

An employer may overcome the presumption of waiver only if it shows the
existence of "circumstances sufficiently extraordinary to defeat" the "strong
presumption that issues parties fail to present to the agency will not be heard in
court." *EEOC v. Lutheran Soc. Servs.*, 186 F.3d 959, 964 (D.C. Cir. 1999); *but see
id.* at 973 (Silberman, J., dissenting) ("I do not see how the majority justifies
ignoring this [administrative exhaustion] regulation's obligatory nature. That is
equivalent to holding the mandatory exhaustion regulation unenforceable and
replacing it with a judge-made, equity-inspired, permissive doctrine.").

Long Branch did not comply with the requirements for opposing an EEOC
subpoena spelled out in 29 C.F.R. § 1601.16(b)(1) and (2). The EEOC served the
subpoena on Long Branch by email on July 23, 2014. That same day the EEOC
faxed a courtesy copy of the subpoena and served a certified copy that Long
Branch received two days later. II-AA-34; II-AA-63-66. Thus, to the extent Long
Branch intended not to comply with the subpoena or to place conditions on its
response, it was required to petition the Director of the EEOC's Newark Area
Office for revocation or modification of the subpoena within five days (not

including weekends) – in other words, by July 30, 2014. Even if this Court looks to the service of the certified mail copy of the subpoena (rather than the electronic service of the email copy) as the event triggering the operative time limit, Long Branch was obligated to mail its petition by August 1, 2014.

The city never filed any such petition. Instead, Long Branch improperly presented its argument against the subpoena in a state court motion to quash, which it did not provide to the EEOC until August 7, 2014. In the absence of a timely filed petition, the EEOC did not conduct an administrative review of Long Branch's contentions. Based on its failure to send a timely petition to the EEOC, Long Branch waived its right to challenge the subpoena in court. *See* 29 C.F.R. § 1601.16(b); *Aerotek*, 498 F. App'x at 648-49; *Cuzzens*, 608 F.2d at 1064; *City of Milwaukee*, 54 F. Supp. 2d at 891. That ground alone justifies reversal of the district court's decision.

## II.   The EEOC is Entitled to Long Branch's Unconditional Production of the Subpoenaed Materials.

### A.   The Requested Records are Clearly Relevant, and Congress Has Authorized the Potential Disclosure of Such Material to the Charging Party.

The magistrate judge and the district court both agreed with Long Branch's argument that the EEOC should not receive the material it subpoenaed until it commits not to disclose any portion of it to Lt. Johnson. Based on the settled case law governing EEOC administrative subpoenas, however, the Commission is

11

entitled to obtain the personnel records of comparators and to disclose that material

to a charging party to facilitate its efforts to investigate, conciliate and

administratively resolve charges of discrimination under Title VII.

As noted above, the Commission has broad investigatory powers under Title

VII. *See* 42 U.S.C. § 2000e-8(a). Accordingly, to enforce an administrative

subpoena, the EEOC need show only that the subpoena is within the agency's

authority, its demand is sufficiently definite, and the information sought is relevant

to the investigation. *Univ. of Pa.*, 493 U.S. at 191; *United States v. Morton Salt

Co.*, 338 U.S. 632, 652 (1950). Indeed, the Supreme Court has explained that the

Commission is entitled to "virtually any material that might cast light on the

allegations against the employer." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68-69

(1984); *see also EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 115-16 (3d

Cir. 1985) ("[T]he EEOC is entitled to all that is relevant to the charge under

investigation. . . . The concept of relevancy is construed broadly when a charge is

in the investigatory stage."); *cf. EEOC v. Dillon Cos.*, 310 F.3d 1271, 1275 (10th

Cir. 2002) (noting that courts generally defer to the EEOC's determination of what

information is relevant to a given charge and will enforce subpoenas "unless they

are plainly incompetent or irrelevant to any lawful purpose" (internal citation

omitted)); *EEOC v. Randstad*, 685 F.3d 433, 448 (4th Cir. 2012) (holding that a

12

court will defer to an EEOC relevance determination "so long as it is not obviously wrong" (internal citation omitted)).

Relevant material in this context may include documents from the personnel files of comparators. *See, e.g.*, *EEOC v. Technocrest Sys., Inc.*, 448 F.3d 1035, 1040 (8th Cir. 2006) (enforcing subpoena for personnel files of all employees over employer's objections); *EEOC v. Univ. of N.M.*, 504 F.2d 1296, 1303 (10th Cir. 1974) (enforcing subpoena for comparators' personnel files over employer's objection that they contained "personal, private, and confidential" and "extremely sensitive" material); *EEOC v. Twp. of Howell*, Civ. Nos. 91-2731 and 2732, 1991 WL 160350, at *2 (D.N.J. Aug. 12, 1991) (enforcing subpoenas for comparator police officers' personnel files over township's privacy-based objections "because the comparative information is vital to the EEOC's investigation of the charges at issue"); *EEOC v. Roadway Express, Inc.*, 580 F. Supp. 1063, 1067 (W.D. Tenn. 1984) (accepting the EEOC's argument that "[t]he information contained in various personnel files will yield facts as to whether either of the black Charging Parties were treated more harshly under Respondent's rules than were similarly situated white employees who violated the same rules" and enforcing subpoena requesting those files).

Lt. Johnson claims he was disciplined more harshly than six white officers who had done "the same things and worse." II-AA-38. Plainly, the disciplinary

13

records of these six identified comparators are relevant to the EEOC's investigation of his claims.  Under any relevance standard, and particularly under the broad one that applies to EEOC investigations, the EEOC is entitled to the requested materials.[2]  42 U.S.C. § 2000e-8(a); *see Shell Oil*, 466 U.S. at 68-69.

Indeed, Long Branch does not challenge the relevance of the requested material.  Instead, it contends it has a right to condition its production of the material on a guarantee from the EEOC that Lt. Johnson and his representatives will not have access to the material, given the sensitive nature of the documents requested.  As the Supreme Court has explained, however, Congress already took such concerns into account when crafting Title VII's careful balance between privacy protections and the Commission's need to investigate claims of discrimination.  *See Univ. of Pa.*, 493 U.S. at 192-93.  According to this balance, the EEOC must carefully safeguard material it obtains during an investigation, but it has the discretion to disclose such material to the charging party to further its efforts to expedite its investigation and informally negotiate a resolution to the charges.  *Assoc. Dry Goods*, 449 U.S. at 596-97.

---

[2] An employer may also challenge a subpoena by alleging compliance would be unduly burdensome, but only if it can show that production of the requested documents "would seriously disrupt its normal business operations."  *Randstad*, 685 F.3d at 451 (internal citation omitted).  Long Branch did not make such an argument in the district court.  Nor could it have, given the narrowness of the subpoena and the limited number of documents at issue.

14

In *Associated Dry Goods*, the Supreme Court provided a useful summary of the EEOC's role in the "coordinated scheme of administrative and judicial enforcement which Congress created to enforce Title VII," along with a clear explanation of the ways limited disclosure is a vital part of that scheme, which Congress foresaw and fully approved. *Assoc. Dry Goods*, 449 U.S. at 600. After receiving a charge of discrimination, the EEOC investigates to determine whether reasonable cause exists to believe the charge is true; if so, the Commission "must try to eliminate the alleged discriminatory practice 'by informal methods of conference, conciliation, and persuasion.'" *Id.* at 595 (quoting 42 U.S.C. § 2000e-5(b)). As part of these efforts, the Commission must generally maintain the confidentiality of the information obtained during its investigation, 42 U.S.C. § 2000e-8(e), but may disclose information obtained during the course of the investigation "to charging parties, or their attorneys, respondents or their attorneys, or witnesses where disclosure is deemed necessary for securing appropriate relief." 29 C.F.R. § 1601.22; *see also Assoc. Dry Goods*, 449 U.S. at 596-97.

The Supreme Court explained that such limited disclosure is vital for the advancement of Title VII's statutory goals: it assists the Commission's investigatory efforts by allowing it to "more readily obtain information informally"

by "present[ing] the parties with specific facts for them to corroborate or rebut."[3]

*Assoc. Dry Goods*, 449 U.S. at 600-01.  At the same time, the practice assists the

Commission in its efforts to conciliate charges and negotiate their resolution

informally, because "[a] party is far more likely to settle when he has enough

information to be able to assess the strengths and weaknesses of his opponent's

case as well as his own." *Id.* at 601; *see also id.* at 602 ("[I]t is in the interest of all

concerned that the charging party have adequate information in assessing the

feasibility of litigation. . . . The Commission's disclosure practice may therefore

help fulfill the statutory goal of maximum possible reliance upon voluntary

conciliation and administrative resolution of claims."); *EEOC v. Morgan Stanley &*

*Co.*, 132 F. Supp. 2d 146, 156 (S.D.N.Y. 2000) ("As the Supreme Court has

interpreted Title VII, Congress has specifically foreseen and approved of the

EEOC's practice of sharing information with charging parties, because that

practice is consistent with and promotes the statutory purpose.").

Long Branch argued before the magistrate judge and the district court that

the privacy rights of the comparator officers justified a protective order preventing

the Commission from the limited disclosure of that material to the charging party.

II-AA-82; II-AA-121-123.  Such general privacy concerns provide no legal basis

---

[3] In addition to the underlying purpose of Title VII, the Court also based its holding
on the statute's language and its legislative history. *Assoc. Dry Goods*, 449 U.S. at
598-600; *see EEOC v. Morgan Stanley & Co.*, 132 F. Supp. 2d 146, 156 (S.D.N.Y.
2000).

to refuse to enforce a subpoena, however.  As the Supreme Court explained in

*University of Pennsylvania*, Congress already took confidentiality concerns into

account in devising Title VII's statutory scheme.  It ultimately struck a balance

between the EEOC's need to investigate and third parties' need for privacy by

allowing the EEOC access to confidential records while criminalizing the public

disclosure of such information.  *Univ. of Pa.*, 493 U.S. at 192 (discussing the

balance between the Commission's broad access to information and the criminal

penalties for public disclosure of that information in 42 U.S.C. § 2000e-8(e)); *id.* at

194 ("[W]e stand behind the breakwater Congress has established: unless

specifically provided otherwise in the statute, the EEOC may obtain 'relevant'

evidence.  Congress has made the choice.  If it dislikes the result, it of course may

revise the statute."); *see EEOC v. McLane Co.*, 804 F.3d 1051, 1058 (9th Cir.

2015) (holding that the employer's "dissatisfaction with that balance does not

entitle it to withhold information relevant to a charge of discrimination"); *EEOC v.

Bay Shipbuilding Corp.*, 668 F.2d 304, 312 (7th Cir. 1981) ("[C]onfidentiality is no

excuse for noncompliance [with an administrative subpoena from the EEOC] since

Title VII imposes criminal penalties for EEOC personnel who publicize

information obtained in the course of investigating charges of employment

discrimination.").  Even if the magistrate judge or the district court disagreed with

that balance, such disagreement alone is not enough to justify placing conditions

on compliance with the subpoena that conflict with Title VII.

Courts have occasionally found a protective order warranted in situations

where the information the EEOC requests contains trade secrets. *See, e.g.*, *EEOC*

*v. Kronos Inc.* ("*Kronos II*"), 694 F.3d 351, 367 (3d Cir. 2012) (holding that a third

party test manufacturer was entitled to a confidentiality order regarding its tests

because it "would be greatly harmed if its proprietary data was disclosed"); *EEOC*

*v. C & P Tel. Co.*, 813 F. Supp. 874, 876 (D.D.C. 1993) (holding that a test for

applicants was entitled to protection because "the test would, in effect, be

destroyed" if it were disclosed); *EEOC v. Aon Consulting, Inc.*, 149 F. Supp. 2d

601, 608 (S.D. Ind. 2001) (finding that "employment tests and validation studies

present an extraordinarily compelling case for confidentiality").  However, "the

logic of *Associated Dry Goods* makes plain that because disclosure to the charging

party would ordinarily further the enforcement of [Title VII], disclosure should be

the norm and such orders will be appropriate only in unusual circumstances."

*Morgan Stanley*, 132 F. Supp. 2d at 156; *id.* (noting that such an exception should

apply only "in extraordinary circumstances").  In addition, the objecting employer

has the burden of "demonstrat[ing] a reason why the disclosure of the information

sought . . . is somehow outside the scope of the ordinary situation contemplated by

Congress and the Supreme Court." *Id.* at 157.

18

This routine case presents no such extraordinary facts. The charging party alleged discrimination and told the EEOC where to look for comparative evidence substantiating his claims. The EEOC regularly examines personnel files of such comparators. Indeed, in describing the contents of an investigatory file, the EEOC's Compliance Manual offers an example involving the personnel files of both a charging party and a third party. *See* EEOC Compliance Manual § 28.6. Long Branch, the magistrate judge and the district court cited no authority supporting the position that employers may insist on a confidentiality agreement before producing such material. This stands to reason: imposing that type of restriction on the inclusion of crucial information in its investigatory files would severely hamstring the Commission's ability to fulfill its statutory obligation to investigate and conciliate charges of discrimination. Because no extraordinary circumstances were present in this case, conditioning enforcement of the subpoena on the proposed protective order was unjustified and constitutes an abuse of discretion.

### B.    The Magistrate Judge and District Court Based Their Rulings on a Misreading of *Associated Dry Goods*.

In refusing to enforce the EEOC's subpoena without a protective order, the magistrate judge and district court apparently relied on and took out of context a single sentence from *Associated Dry Goods* relating to the disclosure to a charging party of "files other than [the charging party's] own." 449 U.S. at 603. When

19

placed in the proper context, however, it is clear that the sentence refers to files

relating to EEOC investigations of other individuals' charges of discrimination, not

to those individuals' personnel files.  Nothing in the opinion supports the

conclusion that the EEOC may be precluded from disclosing the disciplinary

records of a comparator to a charging party.  Indeed, *Associated Dry Goods* stands

for precisely the opposite conclusion.

*Associated Dry Goods* involved an employer that had been accused of

discrimination in seven separate employee charges.  449 U.S. at 593.  The EEOC

asked the employer for the employment records of all seven charging parties and

other material relating to the employer's general personnel practices.  *Id.*  The

employer refused to produce the material unless the EEOC would guarantee not to

reveal it to any of the charging parties, citing the portion of Title VII precluding

the Commission from "mak[ing] public" the information it obtains during the

investigatory process.  *Id.* at 592 (citing 42 U.S.C. § 2000e-8(e)).  The Commission

refused, citing its practice of making limited disclosures to charging parties of the

investigative files related to their own and related charges "where disclosure is

deemed necessary for securing appropriate relief." *Id.* at 593 & n.3 (quoting

29 C.F.R. § 1601.22); *id.* at 597 ("Though normally a person can see information

in the file only for the case in which he is directly involved, the Commission

sometimes allows a prospective litigant to see information in files of cases brought

20

by other employees against the same employer where that information is relevant and material to the litigant's case.").

The Supreme Court thus confronted two issues: whether the EEOC could disclose to a charging party the information contained in the investigative file relating to *his* charge, and whether it could disclose to a charging party the information contained in an investigative file relating to a charge of *someone else*. As to the first question, the Court held that the EEOC could indeed reveal information to a charging party from the investigative file relating to his own charge, as explained above. *Id.* at 598-603. The Court based this conclusion on the statutory language, the comments of the drafters of that language, and Title VII's twin goals: efficient investigation of discrimination charges and the resolution of those charges through conciliation and negotiation. *Id.* at 598-601.

With respect to the EEOC's practice of disclosing to a charging party the contents of investigative files relating to the charges of *other charging parties*, however, the Court found that this practice was not justified under Title VII. *Id.* at 603 ("[N]othing in the statute or its legislative history reveals any intent to allow the Commission to reveal to that charging party information in the files of other charging parties who have brought claims against the same employer."). Thus, it was with respect to these other *investigative* files – not personnel files – that the Court concluded, "[T]here is no reason why the charging party should know the

21

content of any other employee's charge, and he must be considered a member of the public with respect to charges filed by other people. With respect to all files other than his own, he is a stranger." *Id.*

When given the proper context, this sentence clearly has no bearing on the EEOC's authority to include comparator personnel files in the investigative file relating to a charge of discrimination, nor its ability to disclose this material to the charging party. *Id.* at 598-601. The district court's holding to the contrary thus constitutes an erroneous conclusion of law, and must be reversed as an obvious abuse of discretion.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be reversed and the case remanded for further proceedings.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

MARGO PAVE
Assistant General Counsel

/s/Jeremy D. Horowitz
JEREMY D. HOROWITZ
Attorney

22

U.S. EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., Room 5SW24J
Washington, D.C.  20507
(202) 663-4716
jeremy.horowitz@eeoc.gov

## CERTIFICATE OF BAR MEMBERSHIP

Under Third Circuit L.A.R. 28.3(d), I certify that, as an attorney representing an agency of the United States, I am not required to be admitted to the bar of this Court. I also certify that all other attorneys whose names appear on this brief likewise represent an agency of the United States and are also not required to be admitted to the bar of this Court. *See* 3d Cir. L.A.R. 28.3, comm. comt.

July 26, 2016                                      /s/ Jeremy D. Horowitz
                                                  Jeremy D. Horowitz
                                                  Counsel for Appellant EEOC

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume requirements set forth in Federal Rules of Appellate Procedure Rule 32(a)(7)(B). This brief contains 5,024 words, from the Statement of Jurisdiction through the Conclusion, as determined by the Microsoft Word 2010 word processing program, with 14-point proportionally spaced type for text and footnotes.

July 26, 2016                                      /s/ Jeremy D. Horowitz
                                                  Jeremy D. Horowitz
                                                  Counsel for Appellant EEOC

**CERTIFICATE OF IDENTICALLY FILED BRIEFS**

Pursuant to L.A.R. 31.1(c), I certify that the text of the electronically filed version of this brief is identical to the text of the hard copies of the brief filed with the Court.

July 26, 2016                          /s/ Jeremy D. Horowitz
                                       Jeremy D. Horowitz
                                       Counsel for Appellant EEOC

**CERTIFICATE OF VIRUS CHECK**

Pursuant to L.A.R. 31.1(c), I certify that a virus check using Trend Micro OfficeScan was performed on the electronic version of this brief on July 26, 2016, prior to electronic filing with the Court, and that no virus was detected.

July 26, 2016                          /s/ Jeremy D. Horowitz
                                       Jeremy D. Horowitz
                                       Counsel for Appellant EEOC

## CERTIFICATE OF SERVICE

I, Jeremy D. Horowitz, hereby certify that I electronically filed the foregoing

brief with the Court via the appellate CM/ECF system and filed 10 paper copies of

the foregoing brief with the Court by next business day delivery, postage pre-paid,

this 26th day of July, 2016. I also certify that the following counsel of record, who

has consented to electronic service via his participation in the CM/ECF system,

will be served the foregoing brief via the appellate CM/ECF system:

Counsel for Defendant/Appellee:
Emery J. Mishky
Margolis Edelstein
400 Connell Drive
Connell Corporate Center, Suite 5400
Berkeley Heights, NJ  07922
(908) 790-1401
emishky@margolisedelstein.com

/s/Jeremy D. Horowitz
JEREMY D. HOROWITZ
Attorney
U.S. EQUAL EMPLOYMENT
  OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., Room 5SW24J
Washington, D.C. 20507
(202) 663-4716
jeremy.horowitz@eeoc.gov